## Emanuel's Estate.  Appeal of Jonathan Heagy, Guardian.

*Appeal—Auditor's findings confirmed by court, when conclusive—Supine negligence of guardian.*

Where an auditor has had all the witnesses before him, has found a guardian guilty of supine negligence in the management and collection of rents of certain real estate of the ward and surcharges him accordingly, and the court upon exceptions and after full investigation confirms that finding, the finding is not reversed upon appeal, unless it appears under the evidence to be clearly erroneous.

Argued March 15, 1899. Appeal, No. 31, March T., 1899, by Jonathan Heagy, guardian of Mary Alberta Emanuel, from decree of O. C. Dauphin Co., sustaining auditor's report. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by W. D. PORTER, J.

Exceptions to auditor's report. Before SIMONTON, P. J.

It appears from the record that Jonathan Heagy became guardian of Mary Alberta Emanuel. When the minor came of age the guardian filed his account, and said account being referred to an auditor, the guardian was surcharged to the amount of $850.97, and the costs put upon him, the auditor holding that the guardian had been supinely negligent in the matter of the collection of certain rents of property belonging to the minor.

The court below reduced the surcharge to $319.98, and reduced the auditor's fee from $150 to $50.00.   Guardian appealed.

*Errors assigned* were (1) in not sustaining appellant's third exception to the auditor's report, which was as follows: " The learned auditor erred in his finding of fact on the third page of his report in these words: ' Your auditor finds that the said Jonathan Heagy did either not employ or exercise proper care in the selection of his agents, or did not properly inform himself as to whether his said agents were exercising the proper diligence which the said ward had a right to expect from the said guardian.' "   (2) In not sustaining appellant's fourth exception to the auditor's report, which was as follows : " The learned auditor erred in his finding of fact as set forth on page three of his report (after misquoting from the accountant's testimony) ' I guess it was seventy-five months in my possession and at $10.00 per month would come to $750.   I never tried renting the North street property ; Mrs. Johnson attended to that and she told me whenever there was any money from it she would let me know.   I do not know how much rent I got out of the North street property or how much I was entitled to ; ' the auditor finds in these words : ' Would indicate that he is guilty of the most supine negligence and that he should be properly charged with the rent of the Filbert street house for seventy-five months at $10.00 per month, and that as there was or should have been collected from the North street property for the interest of his said ward the sum of $99.75, that he should be therefore charged with the full amount.'   The learned auditor should have found that there was no affirmative evidence before him to show that the accountant by any means in his power could have collected more rent from these properties than he has accounted for ; that the evidence showed that the occupant of the Filbert street property was out of work during the greater part of his tenancy, and was unable to pay anything ; that on account of the location of the property and the stringency of the times during this period that it was improbable in the last degree that any paying tenant could have been obtained ; that the accountant and his agents were diligent in their efforts to secure rent or get a better tenant, and that there should be no surcharge on

account of the Filbert street house. That, as to the North street house, the accountant's ward had but an undivided one-seventh interest; that the property, when occupied, was occupied by a tenant under a lease from an administratrix for the benefit of the joint owners, and that she had at all times control of it, and that this precluded the guardian from exercising a landlord's power in renting or collecting the rent, and that there should be no surcharge on this account." (3) In not sustaining in full the appellant's seventh exception to the auditor's report, which was as follows: "The learned auditor erred in finding that there was due the ward, Alberta Fry, $850.97. He should have found that the only amount for which the accountant is liable is $13.03, as stated in his account." (4) In sustaining any part of the surcharge recommended by the auditor on account of rents of the ward's Filbert street house, uncollected, or lost or embezzled by the guardian's rent agents. (5) In sustaining any part of the surcharge recommended by the auditor on account of revenue from the North street property of the ward's grandfather. (6) In sustaining any items of surcharge on account of rents, in the absence of evidence justifying a finding of supine negligence on the part of the guardian. (7) In disallowing $8.75 of the amount expended by the guardian in necessary traveling expenses on business for his ward and her property. (8) In placing upon the guardian any part of the costs of the audit. (9) In not reducing the auditor's fee to $35.00 in accordance with the act of assembly approved June 4, 1879, P. L. 84.

*F. M. Ott* and *J. M. Weakley*, with them *A. D. B. Smead*, for appellant.—The Superior Court will, both as to law and facts, carefully examine into cases which have been passed upon by an auditor, whether confirmed by the court below or not, and, if justice requires it, it will set the findings aside. This is clearly indicated in Fritz's Est., 3 Pa. Superior Ct. 33, Platt-Barber Co. v. Groves, 7 Pa. Superior Ct. 599, Kramer v. Boggs, 5 Pa. Superior Ct. 394, Semple's Est., 189 Pa. 385, Allison v. Wilson, 13 S. & R. 330, Silverthorn v. McKinster, 12 Pa. 67, and Howell v. Mellon, 189 Pa. 169.

Without supine negligence, clearly proven and distinctly found, no surcharge at all was lawful. The Superior Court

has recently decided that "good faith and common skill and prudence but not infallibility of judgment are required of a trustee:" Semple's Est., 189 Pa. 385; Bechtel's Appeal, 7 Pa. Superior Ct. 451; Bartol's Est., 182 Pa. 407; Neff's Appeal, 57 Pa. 91.

The hard times of 1820 and those of 1873 were judicially taken notice of by the Supreme Court: Konigmacher v. Kimmel, 1 P. & W. 207; Jack's Appeal, 94 Pa. 367.   Why should the panic of 1893 and its consequences be ignored by this court?

*J. C. Durbin* and *Paul A. Kunkel*, for appellee.—An auditor has no distinctive functions of his own, but only assists the court in finding facts and coming to conclusions.   When the court itself reviews, revises, corrects and restates the case, and itself finds the facts, it is not necessary to go beyond the court's final findings and conclusions.

A guardian is clothed with an interest as well as an authority in his ward's estate and he can distrain in his own name for rent in arrears: 1 Rhone's O. C. P. 343, sec. 117; Carskadden & McGee, 7 W. & S. 140.

Where a guardian leases his ward's real estate without exacting security or payment in advance, he is personally liable for such losses and may be so surcharged: 1 Rhone's O. C. P. 345, sec. 131; Landis's Account, 1 Pears. 401.

In the management of his ward's estate there are two principal or cardinal principles: first, he must act for his ward's interest and not for himself; second, he must exercise common prudence, skill and promptness: 1 Rhone's O. C. P. 353.

The court finds that the North street property, in which the ward had an interest of one seventh was rented for $10.00 per month, and that the portion to which the ward was entitled was $99.00.   The court having examined all the evidence, deducted one fourth of this amount for taxes and repairs, certainly a very bountiful allowance, which left $74.35 to be surcharged against the guardian.

Counsel for appellant in their argument devote considerable time and space and quote much law to show, that when a testator directs the sale of real estate, it must be already considered personal property; this is so except where the parties choose to treat it as real estate.   This was the case here.   The

facts and the evidence show it, and this they had a perfect right so to do.

The principle of law enunciated by BLACK, C. J., in Nicholson's Appeal, 20 Pa. 50, is applicable to the guardian in this case.

OPINION BY W. D. PORTER, J., February 16, 1900:

The appellant was, on June 22, 1891, appointed guardian of Mary Alberta Emanuel, who, on August 29, 1897, attained her majority. The guardian filed a final account, to which, the ward filed exceptions. An auditor was appointed, who, after a full hearing, filed a report finding that the guardian had been supinely negligent in the management and collection of the rents of certain real estate of the ward, and recommending a decree surcharging the accountant. The court below, upon exceptions to the report of the auditor, sustained the finding as to the supine negligence of the guardian, but reduced the amount of the surcharge, and, thereupon, the guardian took this appeal.

There were three items upon which the appellant was surcharged: (1) The rentals of a house on Filbert street, Harrisburg, of which the ward was sole owner; (2) the share of the ward in the rentals of a house on North street, in which the interest of the ward was one undivided seventh; and (3) the court reduced the amount for which appellant claimed credit, for necessary traveling expenses. As to the third item, the burden was upon the accountant, and he failed to establish by evidence, that the expenditure had been made in the performance of the duties of his trust. The court reduced the credit for such expenses, which action was fully warranted by the testimony. This item is not worthy of further consideration, and the seventh assignment of error, which is founded upon it, is dismissed.

From the time the guardian was appointed up to April 1, 1894, the rents of the Filbert street property were collected by E. M. Bishop, administrator of the estate of the father of Mary A. Emanuel. The auditor found that the appellant should be surcharged for the amount of the rents for this period, but the learned court below overruled this finding, and found that the administrator had applied the rentals to the payment of liens

upon the property and for necessary repairs, and had accounted to the guardian for the balance, and that, therefore, the appellant was only to be held to account for his management of that property and its revenues from April 1, 1894, until September 1, 1897, a period of forty-one months. The auditor and the court below found that the property was occupied and rented, yielding a monthly rental of $10.00. This finding of the auditor was not excepted to in the court below, nor is it here assigned for error; we must, therefore, assume that the property ought, in the absence of explanation, to have produced revenues amounting, during the period, to $410. The accountant charged himself for rentals of that property, during that period, amounting to $120.51, net, after deducting $27.80 for repairs during 1894, and $24.71 taxes for 1895, or $173.02 in all, leaving $236.98 not accounted for. The learned auditor and court below have found that this amount was lost through the supine negligence of the appellant. When such a fact is found by an auditor, who has the witnesses before him, and the court, upon exceptions and after full investigation, confirms that finding, the finding is not to be reversed upon appeal, unless it appears, under the evidence, to be clearly erroneous: Fritz's Estate, 3 Pa. Superior Ct. 33; Kramer v. Boggs, 5 Pa. Superior Ct. 394. Was there sufficient evidence to support the finding that the loss occurred through the supine negligence of the accountant? A careful consideration of the testimony has convinced us that there was. When the accountant took charge of this property he found it in possession of a tenant who had been there for a long time; the rent was payable in advance, and had been paid with regularity up to that time. This same tenant continued to occupy the premises during almost the entire time of the accountant's control of the property. The accountant himself gave no attention to the property, but turned it over to various agents. During the first year his agents reported the collection of but three months' rent, yet he changed neither the tenant nor the agent. At the end of the second year the rent was still further in arrear, and shortly before that time, one of accountant's agents had gone away without making any satisfactory explanation of the condition of the account with the tenant. The appellant did not even inquire of the tenant to ascertain how much rent had really been paid, but permitted him to enter

upon a third year of his tenancy, without taking any steps whatever to protect the interests of his ward. During the last seventeen months of appellant's guardianship, his agents accounted to him for less than seven months' rent. During all this time, he took no steps to procure a tenant who would pay or an agent who would collect; he never made any effort to find out how much the tenant had paid, and, finally, just before the ward attained full age, he permitted the tenant to remove and take his property out of the commonwealth without attempting to collect any amount that was owing. We are of opinion that the finding of the auditor was sustained by the evidence.

The auditor found that the ward of appellant was entitled to one seventh of a house and lot on North street, Harrisburg, which yielded an average rental of $10.00 per month; that, during the whole time of appellant's guardianship, this house was rented and occupied, and that there was, or should have been, collected from this property, for the interest of said ward, the sum of $99.75. The only exception to these findings filed in the court below, was: "That, as to the North street house, the accountant's ward had but an undivided one-seventh interest; that the property, when occupied, was occupied by a tenant under a lease from an administratrix for the benefit of the joint owners, and she had, at all times, control of it, and that this precluded the guardian from exercising the landlord's power in renting or collecting the rent." The learned court below overruled this exception, but reduced the item of surcharge to $74.25, by an allowance for taxes and repairs. The exception made no question of the ownership of this interest, as real estate, and the court below was not called to pass upon that question. It is now suggested that the will of the grandfather of the ward had directed this property to be sold, upon the death of his widow, and the proceeds to be distributed equally among his children, and that, by force of this direction, this property is to be considered as a part of the personal estate of the ward's deceased father. That the direction to sell did work such a conversion is not to be doubted. It is equally true that the parties interested in the fund may elect to accept the land unconverted, and, if they do so, they immediately acquire an estate therein, and such election to take the land, as land, may be established by parol evidence: Willing v. Peters,

7 Pa. 287 ; Howell v. Mellon, 189 Pa. 169. . In the present case it is manifest from the evidence that the testator's widow had died during the lifetime of Aaron Emanuel, the father of appellant's ward, who was one of the parties entitled to take the fund to be derived from the sale of the real estate ; that the parties elected to take the property, as real estate, and that they received the rent, as rent. The appellant recognized these facts and went to Mrs. Johnson, who had been collecting the rent, and arranged for receiving the share of his ward. The property never has been sold, and the parties entitled to the proceeds have continued to treat it as real estate. When a party not only permits a finding of fact by an auditor to pass unquestioned in the court below, but in such exceptions as he does file concedes the finding of fact to be true, the court below will not be reversed for accepting the fact as established. We must, therefore, assume it as settled that the ward was entitled to receive one seventh of the revenues of the North street property, and that her share of such revenues, during the term of the guardianship, amounted to $74.25. The auditor and the court below have found that the whole of said amount was lost through the supine negligence of the appellant. For this finding there was ample warrant in the evidence. The appellant knew that the estate of his ward was entitled to this rent. Shortly after he became guardian he went to Mrs. Johnson and arranged that she should continue to collect the rent and let him know when there was any money coming to his ward, and from that time until just before the ward came of age he never gave the property any attention. He made no inquiries as to the responsibility of Mrs. Johnson, and, during a period of over six years, he never inquired as to whether she had received any money for the rent of the property of his ward, and down until the present time he has never received nor sought to obtain any statement of the moneys received and paid out upon account of that property. He simply abandoned the rights of his ward in regard to that house and lot. The first six assignments of error are dismissed.

The costs in the court below and before the auditor were occasioned by the failure of the appellant to properly account, and were justly imposed upon him. The fee of the auditor was fixed by the court in accordance with the terms of the Act

of June 4, 1879, P. L. 84. The eighth and ninth assignments of error are without merit.

Decree affirmed and appeal dismissed at costs of appellant.