*In re* GRAFF'S ESTATE.

1. ESTATES OF DECEDENTS — SURVIVING WIFE — LIFE TENANT — TENANTS IN COMMON.

 A wife who, after the death of her husband, continues by common consent to occupy the homestead without assignment of dower, the children remaining with her as long as they choose and returning home at pleasure, holds the premises, not as life tenant, but as tenant in common with the children.

2. SAME — HOMESTEAD — RENT — ADMINISTRATION — TAXES AND REPAIRS.

 While a widow cannot be charged with the rent of the homestead, which, after her husband's death, she continues to occupy with the children, under the provisions of 3 Comp. Laws 1897, § 8929, permitting a widow entitled to dower in lands of her husband to occupy the same, without assignment of dower, so long as those in interest do not object, neither can she, as administratrix, be allowed to charge the estate for taxes paid and repairs made during such occupancy.

3. SAME — DELAY IN FILING ACCOUNT — CHARGES DISALLOWED.

 A widow who, without cause, delays for a long term of years the filing of her account as administratrix of her husband's estate, during all of which time she occupies, without payment of rent, the property belonging to the estate, cannot, upon a sale for distribution being ordered, charge the fund arising from such sale with the funeral expenses, expenses of the last sickness, amounts paid for taxes and repairs, probate fees, insurance moneys, and other like expenses, with interest, incurred during the long period of her occupancy.

Error to Wayne; Lillibridge, J. Submitted January 31, 1900. Decided March 27, 1900.

Mary Graff appealed from an order disallowing certain items in her final account as administratrix of the estate of Joseph Graff, deceased. The order of the probate court was reversed in the circuit, and William J. Graff and others, representing the estate, bring error. Reversed.

*James Swan*, for appellants.

*Joseph R. Nolan* (*James H. Pound*, of counsel), for appellee.

LONG, J.   It appears that Joseph Graff died in 1868, and Mary Graff, his widow, was appointed administratrix of his estate on June 21, 1870.   The property coming into the hands of the administratrix consisted of · a house and lot in the city of Detroit, which was subsequently sold for the sum of $1,410.   There was no other property.   Mr. Graff left surviving him, besides his widow, four children. The children continued to live in the house with their mother for several years, the last one living there until 1881.   The widow looked after the property, kept it in repair, and paid the taxes, water-rates, and insurance, until 1894.   During all this time no one questioned the right of the widow to occupy it as a home.   She made some considerable repairs on the house during the time, and for a period rented a part of it.   She loaned some money to one of the sons on his note.   When it became due, she sued it, and levied on his interest in the house and lot, and on the sale bid it in, and on the final sale of the premises received for that interest $130.   During all these years she filed no account as administratrix.   After the sale of the property, she presented to the probate court her final account, in which she charged herself with about $100 rent of the house, and also with the cash received on the sale of the property, $1,260, less $130, paid the sheriff of Wayne county for release of levy on William J. Graff's share of property; making her total account for moneys received from the property about $1,230.   She credited herself in this account with all the moneys paid for State, county, city, and other taxes for all the years from and including the year 1868 to and including the year 1894, with interest on each payment from time paid to date of filing account; also with repairs and interest thereon, fees paid county treasurer and interest thereon, cash paid for indemnity bond on sale of the premises, at-

torney's fees, printing, etc. This account was presented to the probate court, and that court found as follows: "Examined and allowed December 9, 1898, with balance of $856.83 due from the administratrix, in addition to the sum of $130 credited as paid on levy against interest of William J. Graff." From this finding the administratrix appealed to the circuit court. The cause was there heard before the court without a jury, and the court found as follows:

"1. That the various amounts paid for taxes by said administratrix, with the interest thereon from the time of payment, as more fully set forth in said account, be, and the same are hereby, allowed to said administratrix in full.

"2. That the various amounts paid for necessary repairs by said administratrix, with the interest thereon from the time of payment, as more fully set forth in said account, be, and the same are hereby, allowed to said administratrix in full.

"3. That the probate fees paid to the county treasurer, in the sum of $15, by said administratrix, with interest thereon from the time of said payment, set forth in said account, be, and the same are hereby, allowed to said administratrix in full; also the printing bill, with interest from time of payment, for the affidavit of publication *in re* petition for appointment of administratrix.

"4. That the item in said account for the legal services of Joseph R. Nolan, in the sum of $250, be, and the same is hereby, allowed in full, as a reasonable and proper charge against said estate; and also the items in said account marked, 'Ætna Indemnity Company, for bond on sale of real estate, $30; Detroit Free Press, advertising, display, $17.62; Detroit Legal News Company, legal printing on sale, $18.15; Charles Baines, auctioneer, $10; M. C. Martin, printing sale sign, $1.50; abstract to date, C. M. Burton, $4.20; abstract, previous work on same, $14; Detroit Legal News, printing on license to sell, $4.40; and affidavit of publication *in re* appointment of administratrix, $4.45,'—with interest thereon from the time of payment, be, and the same are hereby, allowed to said administratrix as proper charges against said estate.

"5. The court having permitted an amendment of said account at the trial thereof to include therein the expendi-

tures of said administratrix for insurance and water taxes, the same are hereby allowed to said administratrix as follows: Total insurance paid on premises by administratrix to 1894, $96; total water taxes, as shown by receipts of water office, paid by administratrix, $149.50.

"6. The court allows the funeral bill at $25, with interest from January 1, 1869, and expenses of last sickness at $5, with interest from same date.

"It is further ordered that said administratrix be charged with the full amount of rents received by her from the subtenants of the premises by her sold, as more particularly appears in said account, and that said amount be deducted from the amounts heretofore allowed said administratrix.

"It appearing to the court, after computing the various allowances made in favor of said administratrix, and deducting therefrom the credits for money received from the sale of the property and rents received, that there will be a balance in favor of said administratrix, and the administratrix demanding no affirmative decree against the estate, it is ordered and decreed that said administratrix be, and she is hereby, discharged as such administratrix, and her bond given as such administratrix in this case is hereby canceled. It is further ordered that a certified copy of this order or decree be filed in the probate court for said county of Wayne."

From this finding the heirs have appealed.

Some question is raised by the appealing parties as to the rights of the widow in the premises. It is their contention that she was a life tenant, and therefore bound to pay the taxes and make repairs on the premises; or, in the words of counsel:

"We contend that the interest the widow had in the property was merely the right of dower, to wit, the use during her natural life of one-third part of all the lands whereof her husband was seised at any time during the marriage (3 Comp. Laws 1897, § 8918); and that, by license or permission from the heirs, her dower interest was extended to embrace the whole of the realty of which her husband died seised, thereby making her a life tenant of the whole, instead of a one-third; and that, in view of this position we take, the allowance or nonallowance of the items in question should be governed by the laws relative to life tenants."

It is therefore contended that the court erred in allowing all the items for taxes, repairs, water taxes, and insurance, with the years' accumulated interest thereon. The case of *Defreese* v. *Lake*, 109 Mich. 415 (67 N. W. 505, 32 L. R. A. 744, 63 Am. St. Rep. 584), is cited in support of this claim. That case does not support the contention of counsel. The contention there was whether the life tenant created by will had accepted the estate thus created. It was held that "the rule that a life tenant in possession, to whom taxes are assessed, cannot cut off the remainder-man, and acquire the title in fee, by allowing the premises to be sold for taxes, does not extend to a devisee of a life estate who has renounced the devise." It was held, however, that "the devisee of a life estate in remainder cannot, if he accepts such devise, obtain title in fee to the land by purchase at a tax sale for taxes assessed during the incumbency of his predecessor in title, and such purchase at most only entitles him to reimbursement from the latter, or to contribution from the remainder-men, to whose benefit the purchase inures." There was no such relation existing between the widow and these children in the present case. There was no will, and the widow and children continued to occupy the premises jointly so long as any of them chose, and when the children left, one by one, the widow was left in possession. The children returned at times, and the house was at all times kept open for their return; and it is apparent that it was always regarded as the home of any of them who might wish to return. The widow's dower was never assigned, and she continued to reside there by the consent of all of them, so far as appears by this record. 3 Comp. Laws 1897, § 8929, provides:

"When a widow is entitled to dower in the lands of which her husband died seised, she may continue to occupy the same with the children or other heirs of the deceased, or may receive one-third part of the rents, issues, and profits thereof, so long as the heirs or others interested do not object, without having the dower assigned."

The widow was not a life tenant under the circumstances here stated. She had a homestead and dower interest in the premises, and was, therefore, a tenant in common with the children.

It is conceded that she made some repairs on the premises, and that she paid the taxes for the years charged in her account. It appears that she let these matters run along from 1870, when she took charge of the estate, until 1898, a period of 28 years, and then charges interest on these payments of taxes, expenses of repairs, etc., and in this way proposes to take the whole property to herself by accumulations of interest. It was her duty as administratrix, had there been debts, to close the estate at least within four years and six months. *Hoffman* v. *Beard*, 32 Mich. 222. While her failure to do this would not prevent the sale of the estate for distribution (*Biddle* v. *Wendell*, 37 Mich. 452), yet the administratrix should not have been permitted to carry the estate along without a final report and settlement. There were no debts allowed against this estate, so far as shown by this record; and there seems to have been no reason why the estate could not have been closed, and the final account of the administratrix filed, within the first 18 months after her appointment as administratrix. It appears in the final account of the administratrix that she paid taxes in 1868 to the amount of $9.82. She charges interest on this amount from that time to 1898, and the interest charge amounts to $17.15, or almost double the amount of the taxes paid. As another illustration, we find a charge: "Necessary repairs to the homestead, $50. Interest on $50 from January 1, 1873, $76.50;" making a total of $126.50. So all through this account we find the interest charge on more than half the items almost double the original charge. The widow was furnished with a home without charge. The only rent she charges herself with is that collected from tenants, amounting in all, with accumulated interest, to about $100. She cannot be allowed to have the premises rent free, and then charge items for taxes and repairs

made. It is true that she could not be charged with the rent of the premises, except such as she received from other parties, and that an action would not lie against her for use and occupation. *Fenton* v. *Miller*, 116 Mich. 49 (74 N. W. 384, 72 Am. St. Rep. 502), and cases there cited. On the other hand, she should not be permitted to charge for taxes paid and repairs made during that time. When she made the petition for the sale of the premises for distribution, she alleged in her petition that there were no debts against the estate, and she now seeks to bring the estate into her debt to an amount more than equal the price the premises sold for. We think the only charge she can make against this fund is the expense of the sale for distribution. It will be so ordered.

The judgment of the circuit court will be reversed, and the case certified to the probate court to carry out the judgment here, with costs of this court and the court below in favor of the contestants.

The other Justices concurred.